David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BENITO ROSALES, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; TRANSUNION, LLC; INNOVIS LLC; AND WELLS FARGO HOME MORTGAGE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.    This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.    Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

**PARTIES**

4.    Plaintiff Benito Rosales ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.    Defendant Wells Fargo Home Mortgage ("WFHM") is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.   WFHM is a corporation doing business in Nevada.

6.    Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Experian

is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Experian is doing business in Nevada, with a principal place of business in Ohio.

7.    Defendant Equifax Information Services LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

8.    Defendant TransUnion LLC ("TransUnion") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  TransUnion is doing business in Nevada, with a principal place of business in Pennsylvania.

9.    Defendant Innovis LLC ("Innovis") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Innovis is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada.

10.   Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant.

## FACTUAL ALLEGATIONS

### *General Allegations*

11.   The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence,

which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

12.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

13.     Experian, Equifax, TransUnion, and Innovis (collectively, the "CRA Defendants") rereported inaccurate and incomplete information, respectively, thus violating their respective duties to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when providing a consumer with a disclosure of his consumer file.

14.     To this end, the incomplete reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete.

4

15.    A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

16.    Additionally, reporting and rereporting patently incorrect and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

## THE EXPERIAN VIOLATIONS

### *Experian and WFHM Failed on Investigation of Plaintiff's Dispute to Report Complete Information about the WFHM Account No. ****6122*

17.    Plaintiff obtained a consumer report from Experian, dated June 12, 2017, Report No. 0706-9979-09 ("Experian Disclosure").  The Experian Report included reporting of a WFHM mortgage partial account no. ****6122 ("WFHM Account").

18.    Specifically, on information and belief, the Experian Disclosure indicated that positive data WFHM should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of Plaintiff's positive payment history on his mortgage was patently incorrect because he was in fact making timely monthly payments from February 7, 2014 through June 7, 2017, on the WFHM Account ("Positive Suppressed Data").

19.    This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to WFHM.

20.    Upon information and belief, the Payment History segment has a significant overall impact on the various consumer reporting products that Experian offers credit decision makers.

5

21.     The Payment History reporting was patently incorrect because it did not reflect Plaintiff's actual payment performance after July 2016.   Instead, it reflected no performance whatsoever beyond July 2016.

22.     This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to WFHM from February 7, 2014 through June 7, 2017.

23.     Accordingly, on or about August 2, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

24.     Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

25.     Plaintiff included proof of the Suppressed Positive Data, which was provided directly by WFHM to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI Response") to WFHM.

26.     In relevant part, the Experian Dispute Letter stated:

> Attached is a copy of my driver's license and other documentation to prove my identity.  On 06/12/2017 your company provided me with a consumer credit file which is attached.  As you can see from your credit file and attached documents, I have a mortgage account with **Wells Fargo Home Mortgage** (**Account No. ****6122**) and you are not reporting complete information about this account.  Specifically, I obtained information from **Wells Fargo Home Mortgage** in which **Wells Fargo Home Mortgage** provided proof (attached) it furnished to you that I was "current" with my payments from 02/07/2014 through 06/07/2017.    Reporting this information is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.
>
> You are impermissibly suppressing this information and depriving me of a

*complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

Please make these corrections immediately and send me a copy of my corrected consumer credit file.

27.    Indeed, the RFI Response clearly laid out the Suppressed Positive Data that Experian failed to include in Plaintiff's Credit File.

28.    After receiving the Experian Dispute Letter, Experian was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

29.    On or about September 10, 2017, Plaintiff received notification from Experian through its "reinvestigation," Experian Report No. 0041-8342-23, that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and updated the WFHM Account. However, Experian failed to correct fully Plaintiff's Credit File to include all of the Suppressed Positive Data in WFHM's updated tradeline. Specifically, Experian continued to only report July 2016 and earlier as current in the payment history.

30.    A reasonable investigation by Experian and WFHM should have resulted in an update to WFHM's tradeline to include all of the Suppressed Positive Data.

31.    Experian and WFHM therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

32.    Experian and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

33. Experian re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.   Specifically, some of the Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File.

34. Experian and WFHM, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

35. Due to Experian and WFHM's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

36. And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the materially omission of the Positive Suppressed Data on the notice of results of reinvestigation perfected Plaintiff's injury as soon as Experian provided it Plaintiff.

37. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

38. Plaintiff's efforts to correct Experian and WFHM's incomplete and inaccurate reporting were fruitless resulting in this suit.

39. Experian timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i, and Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and

omissions was willful.  Experian's errors and omissions were also willful given that this incomplete and inaccurate reporting continued despite Plaintiff providing Experian with the RFI Response from WFHM as part of Plaintiff's dispute letter specifically stating that WFHM had reported Plaintiff as "current" from February 7, 2014 through June 7, 2017. Plaintiff is, accordingly, eligible for statutory damages.

40.  Also as a result of Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

41.  By reporting incomplete and inaccurate account information relating to WFHM's Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

## THE EQUIFAX VIOLATIONS

***Equifax and WFHM Failed on Investigation of Plaintiff's Dispute to Report Complete Information about the WFHM Account No. ****6122***

42.  Plaintiff obtained a consumer report from Equifax, dated June 12, 2017, Confirmation No. 7163124917 ("Equifax Disclosure").  The Equifax Report included reporting of a WFHM mortgage partial account no. ****6122 ("WFHM Account").

43.  Specifically, on information and belief, the Equifax Disclosure indicated that positive data WFHM should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of Plaintiff's positive payment history on his mortgage was patently incorrect because he was in fact

making timely monthly payments from February 7, 2014 through June 7, 2017, on the WFHM Account ("Positive Suppressed Data").

44.   This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to WFHM.

45.   Upon information and belief, the Payment History segment has a significant overall impact on the various consumer reporting products that Equifax offers credit decision makers.

46.   The Payment History reporting was patently incorrect because it did not reflect Plaintiff's actual payment performance.   Instead, there was no Payment History, so it reflected no performance whatsoever.

47.   This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to WFHM from February 7, 2014 through June 7, 2017.

48.   Accordingly, on or about August 2, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

49.   Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

50.   Plaintiff included proof of the Suppressed Positive Data, which was provided directly by WFHM to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI Response") to WFHM.

51.   In relevant part, the Equifax Dispute Letter stated:

Attached is a copy of my driver's license and other documentation to prove my identity.  On 06/12/2017 your company provided me with a consumer credit file which is attached.  As you can see from your credit file and attached documents, I have a mortgage account with **Wells Fargo Home Mortgage** (**Account No. ****6122**) and you are not reporting complete information about this account.  Specifically, I obtained information from **Wells Fargo Home Mortgage** in which **Wells Fargo Home Mortgage** provided proof (attached) it furnished to you that I was "current" with my payments from 02/07/2014 through 06/07/2017.   Reporting this information is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

You are impermissibly suppressing this information and depriving me of a *complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

Please make these corrections immediately and send me a copy of my corrected consumer credit file.

52. Indeed, the RFI Response clearly laid out the Suppressed Positive Data that Equifax failed to include in Plaintiff's Credit File.

53. After receiving the Equifax Dispute Letter, Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

54. On or about September 8, 2017, Plaintiff received notification from Equifax through its "reinvestigation," Confirmation No. 7251173602, that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and updated the WFHM Account. However, Equifax failed to correct fully Plaintiff's Credit File to include all of the Suppressed Positive Data in WFHM's updated tradeline. Specifically, Equifax continued to not report any Payment History.

55. A reasonable investigation by Equifax and WFHM should have resulted in an update to WFHM's tradeline to include all of the Suppressed Positive Data.

56. Equifax and WFHM therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

57. Equifax and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

58. Equifax re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.  Specifically, some of the Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File.

59. Equifax and WFHM, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

60. Due to Equifax and WFHM's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

61. And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the materially omission of the Positive Suppressed Data on the notice of results of reinvestigation perfected Plaintiff's injury as soon as Equifax provided it Plaintiff.

62. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the

information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

63.   Plaintiff's efforts to correct Equifax and WFHM's incomplete and inaccurate reporting were fruitless resulting in this suit.

64.   Equifax timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i, and Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Equifax's errors and omissions were also willful given that this incomplete and inaccurate reporting continued despite Plaintiff providing Equifax with the RFI Response from WFHM as part of Plaintiff's dispute letter specifically stating that WFHM had reported Plaintiff as "current" from February 7, 2014 through June 7, 2017. Plaintiff is, accordingly, eligible for statutory damages.

65.   Also as a result of Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

66.   By reporting incomplete and inaccurate account information relating to WFHM's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

## THE TRANSUNION VIOLATIONS

*TransUnion and WFHM Failed to Report Complete and Accurate Information about*

*WFHM Account No. ****6122*

67.   Plaintiff obtained a consumer file from TransUnion dated June 13, 2017, identified by TransUnion File No. 376131288 (the "Credit File").

68.   Specifically, TransUnion took a "one size fits all approach" and rather than provide a "complete" and "accurate" Credit File to the Plaintiff, "suppressed" positive data being furnished from WFHM thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy.   However, TransUnion alternatively failed to report timely mortgage payments on the Property reported by WFHM.

69.   This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to WFHM.

70.   Specifically, WFHM furnished positive credit data to TransUnion stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations from February 7, 2014 through June 7, 2017.   However, beginning August 2016, TransUnion failed to include almost a year's worth of suppressed positive monthly account notations that the mortgage was being timely paid (the "Positive Suppressed Data") in Plaintiff's Credit File.

71.   Accordingly, on or about August 2, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed TransUnion's incomplete and inaccurate reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Credit File.

72.    Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

73.    Plaintiff also included proof of the Positive Suppressed Data, which was provided directly by WFHM to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

74.    In relevant part, the Trans Union Dispute Letter stated:

> **Wells Fargo Home Mortgage, Account No. ****6122 - Incomplete Mortgage Reporting**
>
> Attached is a copy of my driver's license and other documentation to prove my identity.  On 06/13/2017 your company provided me with a consumer credit file which is attached.  As you can see from your credit file and attached documents, I have a mortgage account with **Wells Fargo Home Mortgage** (**Account No. ****6122**) and you are not reporting complete information about this account.  Specifically, I obtained information from **Wells Fargo Home Mortgage** in which **Wells Fargo Home Mortgage** provided proof (attached) it furnished to you that I was "current" with my payments from  02/07/2014  through  06/07/2017.    Reporting this information is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.
>
> You are impermissibly suppressing this information and depriving me of a *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.
>
> Please make these corrections immediately and send me a copy of my corrected consumer credit file.

75.    Additionally, the RFI Response laid transparent the Positive Suppressed Data, which TransUnion failed to include in the Plaintiff's Credit File.

76. On information and belief, upon receiving the TransUnion Dispute Letter, TransUnion timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

77. Alternatively, TransUnion failed to notify WFHM pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

78. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

79. On or about September 30, 2017, Plaintiff received notification from TransUnion through its "reinvestigation" that TransUnion received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, TransUnion failed to correct Plaintiff's Credit File to include the Positive Suppressed Data in WFHM's tradeline. Instead, TransUnion stated the results as "Deleted."

80. A reasonable investigation by TransUnion and WFHM would have updated WFHM's tradeline to include the Positive Suppressed Data, not merely deleted the tradeline.

81. TransUnion therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File. Indeed, by deleting the entire tradeline, TransUnion's "reinvestigation" suppressed more positive data than on TransUnion's original report.

82. TransUnion failed to review all relevant information provided by Plaintiff in the dispute to TransUnion, as required by and in violation of 15 U.S.C. §1681i(a).

83. TransUnion re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File. Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from the Plaintiff's Credit File.

84.   TransUnion and WFHM, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

85.   Due to TransUnion and WFHM's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

86.   TransUnion and WFHM's failure to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

87.   Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless resulting in this suit.

88.   TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Indeed, regarding the WFHM Suppressed Positive Data, TransUnion was provided the evidence of its illegal suppression (RFI Response included with Plaintiff's dispute letter) and willfully failed to make the requested corrections to the Plaintiff's Credit File.  Plaintiff is, accordingly, eligible for statutory damages.

89.   Also as a result of TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

90.     By reporting incomplete and inaccurate account information relating to WFHM's Account after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

91.     Plaintiff has been required to retain counsel to prosecute this action based on TransUnion's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

## THE INNOVIS VIOLATIONS

*Innovis and WFHM Failed on Investigation of Plaintiff's Dispute to Report Complete and Accurate Information about WFHM Account No. ****6122*

92.     Plaintiff requested and received a consumer disclosure from Innovis dated June 13, 2017, identified by Innovis Confirmation No. 20174892 (the "Innovis Disclosure").

93.     Specifically, on information and belief, the Innovis Disclosure indicated that positive data WFHM should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of Plaintiff's positive payment history on his mortgage was patently incorrect because he was in fact making timely monthly payments from February 7, 2014 through June 7, 2017, on the WFHM Account ("Positive Suppressed Data").

94.     This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to WFHM.

95.     Accordingly, on or about August 2, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff

disputed Innovis's incomplete reporting by notifying Innovis, in writing, of the incomplete

and inaccurate credit information contained in the Plaintiff's Innovis Disclosure.

96.     Specifically, Plaintiff sent a letter, certified, return receipt, to Innovis (the "Innovis Dispute

Letter"), requesting the above incomplete and materially misleading omissions be

corrected to include the Positive Suppressed Data and correct the inaccurate reporting.

97.     The Plaintiff also included proof of the Positive Suppressed Data, which was provided

directly by WFHM to the Plaintiff in response to Plaintiff's request for information

pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

98.     In part, the Innovis Dispute Letter stated:

> Attached is a copy of my driver's license and other documentation to prove
> my identity.  On 06/13/2017 your company provided me with a consumer
> credit file which is attached.  As you can see from your credit file and
> attached documents, I have a mortgage account with **Wells Fargo Home
> Mortgage** (**Account No. ****6122**) and you are not reporting complete
> information about this account.  Specifically, I obtained information from
> **Wells Fargo Home Mortgage** in which **Wells Fargo Home Mortgage**
> provided proof (attached) it furnished to you that I was "current" with my
> payments from 02/07/2014 through 06/07/2017.   Reporting this
> information is necessary to provide "complete" information about this
> tradeline, and will also likely increase my credit score significantly given
> the "positive" payment history.
>
> You are impermissibly suppressing this information and depriving me of a
> *complete* and accurate credit reporting furnished about this account.
> Accordingly, please stop suppressing this information.  Your failure to
> report this data is lowering my credit score.
>
> Please make these corrections immediately and send me a copy of my
> corrected consumer credit file.

99.     Indeed, the RFI Response laid transparent the Positive Suppressed Data for WFHM, which

Innovis failed to include in the Plaintiff's Credit File.

19

100.  Upon information and belief, upon receiving the Innovis Dispute Letter, Innovis timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

101.  Alternatively, Innovis failed to notify WFHM pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

102.  Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

103.  On or about September 29, 2017, Plaintiff received notification from Innovis through its "reinvestigation" (Innovis Report No. 20789572) that Innovis and WFHM received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).  Although Innovis added some of the Positive Suppressed Data in WFHM's tradeline, Innovis failed to correct January 2015.  Instead, January 2015 remained blank, rather than "OK" to signify that Plaintiff was current, as reported by WFHM in the RFI Response.

104.  A reasonable investigation by Innovis and WFHM should have resulted in an update to WFHM's tradeline to include all of the WFHM Positive Suppressed Data, not merely continuing to show no payment history for January 2015 on the WFHM tradeline.

105.  Innovis and WFHM therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

106.  Innovis and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Innovis, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), respectively.

107.  Innovis re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.  Specifically, the WFHM Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File.

20

108.   Innovis and WFHM, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

109.   Due to Innovis and WFHM's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

110.   And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the material omission of the WFHM Positive Suppressed Data upon the notice of results of reinvestigation perfected Plaintiff's injury as soon as Innovis provided it Plaintiff.

111.   Failing to report and/or rereport the WFHM Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.  Specifically, Plaintiff requested that positive information be added back into his credit report, and instead, the payment history remained blank.

112.   Plaintiff's efforts to correct Innovis's incomplete and inaccurate reporting were fruitless resulting in this suit.

113.   Innovis timely notified WFHM of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i, and Innovis's continued incomplete and inaccurate reporting of the WFHM Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Indeed, regarding the WFHM Suppressed Positive Data, Innovis was provided the evidence of its illegal suppression (WFHM RFI Response included with

Plaintiff's dispute letter) and willfully failed to make the requested corrections to the Plaintiff's Credit File.  Plaintiff is, accordingly, eligible for statutory damages.

114.   Also as a result of Innovis's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

115.   By reporting incomplete and inaccurate account information relating to WFHM's Account after notice and confirmation of its errors, Innovis failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681 *ET SEQ.* (FCRA)**

116.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

117.   The foregoing acts and omissions related to Experian, Equifax, TransUnion, and Innovis constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

118.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to

15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Experian, Equifax, TransUnion, and Innovis.

119.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Experian, Equifax, TransUnion, and Innovis.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

…

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America,

Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 2, 2018

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Attorneys for Plaintiff